# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:13-cv-02614 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JACK FUNDERBURG, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff moves for default judgment [233] against Defendant, claiming that he used a peer-to-peer file sharing networking to distribute twelve of Plaintiff's copyrighted pornographic movies. For the reasons stated below, Plaintiff's motion is granted.

**I.     Background**

The original complaint alleged that Defendant John Doe, a subscriber with the assigned IP address of 24.15.48.82, infringed twelve of Plaintiff's registered copyrights using BitTorrent. BitTorrent is an online peer-to-peer file sharing system that avoids the need to download an entire file from a single source. To distribute a large digital file, the BitTorrent protocol instead breaks a file into small bits and distributes the bits to users. Users then share their bits with each other, such that a given user eventually obtains all the bits in a given file. BitTorrent client software then reassembles the bits so that a user can open and view the file. Each bit of a BitTorrent file has a unique cryptographic hash value ("bit hash") that acts as the bit's digital fingerprint. An entire digital media file also has a unique cryptographic hash value ("file hash"), which similarly acts as the file's digital fingerprint.

Plaintiff's investigator allegedly established a direct TCP/IP connection with IP address 24.15.48.82 and then downloaded one or more bits associated with twelve of its copyrighted movies. The investigator then downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed that the file hash matched files containing Plaintiff's copyrighted films. According to Plaintiff's evidence, a user at this IP address exchanged bits of hundreds of other digital media files in just a three-month period.

Plaintiff then filed a complaint against John Doe, a subscriber with the assigned IP address of 24.15.48.82. After filing the complaint, Plaintiff moved for leave to serve a third-party subpoena on John Doe's Internet Service Provider ("ISP"), commanding it to provide the subscriber's name and contact information. The Court granted Plaintiff's motion, after which Plaintiff filed an amended complaint naming Defendant as the infringer. Plaintiff then moved for entry of default judgment. In a sworn declaration attached to her motion, Plaintiff's attorney states that Defendant's ISP identified him with the accused IP address and that Defendant is not a minor, incompetent, or in active military service.

## II. Analysis

### A. Default Judgment

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment when a defendant fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). On motion for default judgment, a court takes all well-pleaded allegations as to liability as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). The decision to enter a default judgment lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment establishes as a matter of law that a defendant is liable as to each of a plaintiff's claims. *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982).

To receive a default judgment, a plaintiff must state a plausible claim. Plaintiff states a plausible claim that a user at the accused IP address committed direct copyright infringement. Copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Plaintiff pleads the first element by alleging that it is the registered owner of the twelve copyrights listed in Exhibit B. [15-2]. It pleads the second element by alleging that the user at the accused IP address downloaded and distributed bits of the copyrighted works on BitTorrent. Because BitTorrent's purpose is to help a user collect bits that make a complete file viewable, the Court infers that by exchanging bits of Plaintiff's copyrighted movies, the user eventually compiled complete copies of the works. Even if the user didn't compile complete copies, he plausibly infringed Plaintiff's copyrights by copying "constituent elements" of those works. *JCW Investments*, 482 F.3d at 914; see also *Malibu Media LLC v. Gilvin*, 2014 WL 1260110, at *2 (N.D. Ind. Mar. 26, 2014). Accordingly, Plaintiff plausibly claims that this user violated its copyrights. See *PHE, Inc. v. Does 1-122*, 2014 WL 1856755, at *2 (N.D. Ill. May 7, 2014); *Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1150–51 (D. Colo. 2014); *Malibu Media, LLC v. Flanagan*, 2014 WL 2957701, at *2 (E.D. Pa. July 1, 2014); *Malibu Media, LLC v. Brenneman*, 2013 WL 6560387, at *2 (N.D. Ind. Dec. 13, 2013).

Second, Plaintiff plausibly pleads that the infringing user is this Defendant. Courts have questioned what an ISP's identification of an account holder with an IP address actually says about the identity of the actual infringer. See, *e.g.*, *Elf-Man, LLC v. Cariveau*, 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) ("While it is possible that the subscriber is the one who participated in the BitTorrent swarm, it is also possible that a family member, guest, or freeloader engaged in the infringing conduct."); *AF Holdings LLC v. Rogers*, 2013 WL 358292,

at *2 (S.D. Cal. Jan. 29, 2013) ("Because the subscriber of an IP address may very well be innocent of infringing activity associated with the IP address, courts take care to distinguish between subscribers and infringers."). But see *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839, at *4 (S.D.N.Y. July 16, 2013) (collecting cases finding that copyright infringement claims were sufficiently pled where the defendant was only identified by an IP address). Plaintiff, however, does more than merely identify Defendant as the account holder at the relevant IP address. It also offers evidence linking that IP address to bit-exchanges involving hundreds of digital media files in just three months. Taken together, these facts plausibly suggest that Defendant—the controlling account holder of an IP address associated with frequent BitTorrent use—is the infringing user. See *Malibu Media, LLC v. Doe*, 2015 WL 857408, at *4 (D. Md. Feb. 26, 2015) ("That the Defendant's IP address was used to obtain 2,034 other third party files through BitTorrent over an 18–month period supports the reasonable inference that the Defendant-and not some other person using the Defendant's IP address—was the infringer."). The Court therefore finds a plausible claim of direct copyright infringement.

Plaintiff also states a plausible claim for contributory copyright infringement. "A defendant is liable for contributory copyright infringement when it with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005) (citations and internal quotation marks omitted); see also *PHE*, 2014 WL 1856755, at *2. Plaintiff alleges that Defendant contributed to the infringing conduct of other BitTorrent users by participating in the BitTorrent swarm—a group of users uploading and downloading bits from each other simultaneously. Plaintiff contends that Defendant's knowledge can be inferred from his use of the platform, as it is frequently used to share unlicensed content, and the fact that the

film was free. Based on these allegations, Plaintiff alleges a plausible claim of contributory copyright infringement. See *PHE*, 2014 WL 1856755, at *2; *Purzel*, 13 F. Supp. 3d at 1151; *TCYK, LLC v. Martin*, 2014 WL 6978149, at *1 (M.D. Fla. Dec. 9, 2014).

Defendant has had ample opportunity to respond to these claims, but he has not appeared before the Court or made any filings since being named as a Defendant on August 8, 2013. Having entered a default against Defendant for failure to answer or otherwise plead, the Court now finds it appropriate to enter a default judgment against him.

Rule 55 provides that "default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). Because minors frequently use the internet and can download and distribute movies, it is generally advisable for plaintiff's counsel to provide more than her own assurances that a defendant is not a minor. See *Malibu Media, LLC v. Brenneman*, 2013 WL 6560387, at *1 (N.D. Ind. Dec. 13, 2013). Here, Plaintiff's attorney has made no assertions of Defendant's majority status, aside from offering her own assurances in a sworn declaration. That said, the Court reasonably infers that Defendant is an adult, as he is the alleged account holder at that IP address.

### B. Statutory Damages, Costs, and Attorney's Fees

Plaintiff requests monetary relief in the form of statutory damages, costs, and attorney's fees. The Copyright Act provides that an infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504. Subsection (c) provides that

> [e]xcept as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual

> damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c). District courts "enjoy wide discretion in awarding [statutory] fees" and are "not required to follow any rigid formula." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). They may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (citations and internal quotation marks omitted).

Plaintiff requests $27,000 in statutory damages, which amounts to $2,250 per film. It argues that this request is reasonable, as Defendant's alleged willful infringement permits the Court to impose statutory damages as great as $150,000. See 17 U.S.C. § 504(c)(2). In addressing Plaintiff's request, the Court notes growing judicial concern with "the rise of so-called 'copyright trolls' in the adult film industry, meaning copyright holders who seek copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream and file mass lawsuits against anonymous Doe defendants with the hopes of coercing settlements." *Malibu Media*, 2013 WL 6560387, at *2 (citing *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79, 86 (2012)); see also *PHE*, 2014 WL 1856755, at *3. As an actual producer of pornographic films, Malibu Media is unlikely a non-producing troll that purchases the right to bring lawsuits against alleged infringers. See *Malibu Media LLC v. Doe*, 2013 WL 3945978, at *2 (E.D. Mich. July 31, 2013). As an enforcer of pornographic copyrights, however, Plaintiff is among the

entities that courts are concerned may be "inappropriately using the judicial system to extract quick and quiet settlements from possibly innocent defendants paying only to avoid embarrassment." *Malibu Media, LLC v. Doe*, 2014 WL 2530872, at *1 (M.D. Fla. Apr. 10, 2014). The Court is aware of Plaintiff's extensive history of litigation in the last three years alone.[1] Without drawing any conclusions as to this Plaintiff's business model, the Court considers the concerns that other courts have expressed in evaluating requests to enter large damage awards with no relationship to actual damages sustained by a plaintiff. To the extent that these concerns reflect industry-wide trends, they counsel against awards that are triple the statutory minimum, as a default judgment imposing significant statutory damages may overcompensate plaintiffs in these circumstances.

Like other courts, this Court also hesitates to find willful infringement "based solely on a default judgment, without additional, independent evidence of egregious conduct." *PHE*, 2014 WL 1856755, at *3 (citing Pamela Samuelson, Tara Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform,* 51 Wm. & Mary L. Rev. 439, 505–506 (2009)). Although Plaintiff has offered circumstantial evidence going to Defendant's willfulness, it has offered little direct evidence. It has also provided little information going to actual lost profits or the number of other users Defendant aided in violating Plaintiff's copyrights.

With all of these considerations in mind, the Court awards Plaintiff $750 per work, or a total of $9,000, finding this award sufficient to compensate Plaintiff and deter future violations.

---

[1] See, *e.g.*, *Malibu Media, LLC v. Flanagan*, 2014 WL 2957701 (E.D. Pa. July 1, 2014); *Malibu Media, LLC v. Doe*, 2014 WL 1228383, at *1 (N.D. Ill. Mar. 24, 2014); *Malibu Media, LLC v. Brenneman*, 2013 WL 6560387 (N.D. Ind. Dec. 13, 2013); *Malibu Media, LLC v. Doe*, No. 13-C-536, 2013 WL 5276081, at *1 (E.D. Wis. Sept. 17, 2013) ("So far in 2013, Malibu Media has filed 28 of these cases in this judicial district."); *Malibu Media, LLC v. John Does 1-49*, 2013 WL 4501443, at *2 (N.D. Ill. Aug. 22, 2013); *Malibu Media, LLC v. Harris*, 2013 WL 3780571, at *1 (S.D. Ind. July 18, 2013); *Malibu Media, LLC v. John Does 1-21*, 2013 WL 2458290, at *1 (N.D. Ill. June 6, 2013); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191 (N.D. Ill. 2013); *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513 (N.D. Ind. 2012).

See *Malibu Media, LLC v. Cui*, 2014 WL 5410170, at *4 (E.D. Pa. Oct. 24, 2014) (awarding $750 per film in similar circumstances). The Court also grants Plaintiff's request for $2,525 in costs and attorney's fees. See 17 U.S.C. § 505 (authorizing courts to award costs and fees to the prevailing party). Based on counsel's declaration and the circumstances of this case, the Court finds this amount to be reasonable.

### C. Injunctive Relief

Lastly, Plaintiff also asks the Court to (a) permanently enjoin Defendant from directly or contributorily infringing Plaintiff's copyrights under federal or state law, including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (*e.g.*, download) or distribute Plaintiff's copyrighted works, or to make those works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff; (b) order Defendant to delete and permanently remove the digital media files relating to Plaintiff's copyrighted works from any computer, device, or other physical medium in his possession, custody, or control; and (c) order Defendant to delete and permanently remove infringing copies of Plaintiff's copyrighted works from any computer, device, or other physical medium under his possession, custody, or control.[2]

The Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "In cases of unlawful downloads, injunctive relief may be 'appropriate to ensure that the misconduct does not recur as soon as the case ends.'" *Malibu Media*, 2013 WL 6560387, at *3 (quoting *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005)). A court may also direct defendants to destroy all copies of infringed works in their custody and control. 17 U.S.C.

---

[2] Plaintiff has provided multiple versions of its requests for injunctive relief, which the Court has combined. See [33] at 10, 14-15.

§ 503(b). See, e.g., *PHE*, 2014 WL 1856755, at *3; *Malibu Media*, 2013 WL 6560387, at *3; *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006).

To obtain a permanent injunction, a plaintiff must demonstrate (1) success on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested. *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). First, Plaintiff has succeeded on the merits, as Defendant has failed to respond to this action. With respect to the second factor, irreparable harm is not presumed in copyright cases, contrary to Plaintiff's assertion. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006)). Nevertheless, this factor weighs in Plaintiff's favor. Plaintiff contends that Defendant may well continue violating its copyrights—a credible assertion given his failure to respond to the complaint. Plaintiff further contends that Defendant's conduct exposes its copyrighted works to viral infringement, making damages difficult to estimate:

> By virtue of the workings of the BitTorrent protocol, a "seeder" of the copyrighted Work distributes the whole, or portions of, the Work to other recipient peer users, who in turn deliver the whole or portion of the Work to other users in the "swarm." Thus, absent injunctive relief to force the deletion of each torrent file or copy of the Works from Defendant's computers (and from the computers of those persons utilizing the BitTorrent protocol in active concert or participation with Defendants), infringement of the Works can continue unabated in exponential fashion.

[34] at 11 (internal citation omitted). The Court agrees that the potentially expanding number of BitTorrent users makes damages difficult to estimate. See *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (explaining that harm is irreparable when damages "cannot be reliably estimated."). Accordingly, the second factor weighs in Plaintiff's favor. Third, the balance of the hardships weighs against Defendant, as he will not be injured by this injunction. Fourth, the public interest will not be harmed by the relief requested. Accordingly, the Court

9

grants Plaintiff's request for injunctive relief. See *PHE*, 2014 WL 1856755, at *3 (granting a similar injunction in similar circumstances); *Malibu Media*, 2014 WL 2957701, at *5 (same).

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion for default judgment [233]. The Clerk of Court is directed to enter judgment against Defendant as follows:

1. Plaintiff is awarded statutory damages under 17 U.S.C. § 504(c)(1) in the amount of $9,000;

2. Plaintiff is awarded $2,525 in costs and attorney's fees under 17 U.S.C. § 505;

3. Plaintiff is awarded permanent injunctive relief under 17 U.S.C. § 502 and § 503 as follows:

    (a) Defendant is permanently enjoined from directly or contributorily infringing Plaintiff's copyrights under federal or state law, including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (*e.g.*, download) or distribute Plaintiff's copyrighted works, or to make those works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff;

    (b) Defendant is ordered to delete and permanently remove the digital media files relating to Plaintiff's copyrighted works from any computer, device, or other physical medium in his possession, custody, or control; and

(c) Defendant is ordered to delete and permanently remove infringing copies of Plaintiff's copyrighted works from any computer, device, or other physical medium under his possession, custody, or control.

The Clerk is directed to treat this matter as terminated.

Dated: April 24, 2015

_____
Robert M. Dow, Jr.
United States District Judge